# EDGAR A. MACKLIN, etc.,

*v.*

# J. H. HOLLANDER, Treasurer of Porto Rico.

TAXATION OF PROPERTY OF ARMY POST EXCHANGE BY INSULAR AUTHOR-
ITIES—INJUNCTION.

1. Property is not exempt from local taxation merely because it is the prop-
erty of a government agent. It must be shown that the taxation inter-
feres with the governmental instrumentality in executing the govern-
ment purpose.

2. An army post exchange is an institution for private benefit; and taxation
of its property will not impede the efficient exercise of governmental
powers.

October 29, 1900.

*Mr. Pettingill,* District Attorney, for complainant.

*Mr. Harlan,* Attorney General, for defendant.

HOLT, Judge, delivered the following opinion:

The complainant is the United States officer in charge of
the soldiers' post exchange at San Juan.

The defendant is the Treasurer of Porto Rico, and has pro-
cured the collector of customs at San Juan to hold a lot of beer
imported for the use of the exchange, because the tax upon it
under the law of Porto Rico, and collectible by the Treasurer,
has not been paid. The complainant claims that it is for the

Macklin v. Hollander.

use of an agency of the United States government, and therefore not taxable; and he seeks by this bill to prevent the further holding of it, and to procure its possession by the mandatory process of the court.

Suggestion was made in argument that there was no law whatever authorizing the taxation of any imported beer; and whether a proper construction of the provision relied upon authorizes it, might trouble the court had not the averment of the bill itself placed the same construction upon it as is claimed by the defendant; to wit, that beer imported by nongovernmental agencies shall pay a certain tax.

The question is, therefore, presented by the general demurrer to the bill, whether the post exchange is such a governmental agency that the taxing of this beer for its use will impede the general government in the exercise of its powers. If this be so, and it tends to strip a government instrumentality of power to execute the governmental purpose, or hinder its efficient execution, then the tax cannot be collected. This general rule is well settled; the difficulty lies in its application to particular cases, and in determining whether one comes within it.

A few elementary statements are proper. In matters of taxation the state or local authority is sovereign, save so far as the power has been surrendered to the general government.

It is often difficult to draw the line; but a practical view should be taken of their relation, and neither should or can destroy the other.

If one claims the immunity from the sovereign power of taxation, he must clearly manifest it. If he does not, it is right for him to bear his share of this legal burden, that the government may properly discharge its functions.

An institution may be an agent of the United States govern-

Macklin v. Hollander.

ment to some extent, and yet its property be liable to local taxation.

The cases draw a distinction between a tax upon the property of the agent, and one upon the operations of the agent,—one upon the property, and one upon the action.

In the leading case of M'Culloch v. Maryland, 4 Wheat. 316, 4 L. ed. 579, a state tax was attempted to be levied upon the circulating notes of the Bank of the United States, not upon its property, but upon its medium of business. It was a proposed tax upon the operation of the governmental agent, and upon the action of the instrument employed by the general government to execute its powers; and therefore it was held it could not be levied.

The later case of Osborn v. Bank of the United States, 9 Wheat. 740, 6 L. ed. 204, which was a bill to enjoin a tax against the bank for doing business, is to the same effect.

Upon the other hand, the general government may hold the first mortgage bonds, or own stock in a railroad that carries the mails; it may even have been chartered by Congress; and it is to some extent a governmental agent; it is in a sense a government instrumentality; and yet its property is liable to local tax. This was held in the case of Thomson v. Union P. R. Co. 9 Wall. 579, 19 L. ed. 792; and again in Union P. R. Co. v. Peniston, 18 Wall. 5, 21 L. ed. 787.

In other words, property is not exempt from local tax merely because it is the property of a government agent.

A contractor for supplying a military post cannot be fined by state authority for transporting the provisions to the post; but the property is taxable.

The exemption of a governmental agency from local taxation is grounded upon the idea that, if liable, it would impede its

Macklin v. Hollander.

action, and hinder the proper exercise of the governmental powers.

While, therefore, local taxation of its operation is not allowed, the general rule is that its property is liable. Of course, if the property is in use by the government and belongs to it, it is exempt; but if it be that of the agent of the government, it is liable unless the effect of the taxation will be to impede the execution of governmental powers, and deprive the agency of the power to serve the government efficiently and as intended.

It is pertinent, therefore, to inquire into the character and working of the post exchange.

Its primary purpose is to supply the soldiers of the post at reasonable cost with articles of ordinary use not supplied by the government, and afford them the means of rational recreation.

Its secondary purpose is, through profits on the sales to them, to provide means for improving the messes.

It is not the creation of an express act of Congress, but is established and maintained under regulations of the War Department.

This is by virtue of its general power in Army matters; and Congress has not by express law recognized it as a part of the necessary machinery of military posts, and an instrumentality for executing government purposes.

Its membership consists of organizations, companies, and detachments. The primary expenses of starting the exchange are met by an assessment upon its members or purchase upon their credit.

It concerns soldiers only, and is, therefore, from the necessity of the case, under the control of the War Department, and subject to its regulations; but yet its means are not government funds, and are not supplied by the government.

Macklin v. Hollander.

The regulations strictly forbid the use or sale of liquors, but provide that the officer in charge may, upon the recommendation of the executive council of the exchange (three detailed officers), permit beer sold at the exchange, if he is satisfied it will keep the soldiers from going to resorts outside the post limits to get liquors, and will promote temperance and discipline among them. (This permission has been given at the San Juan exchange.)

Any profits from the exchange are, after certain sums are set apart for certain enumerated purposes, among which are named any taxes for which the exchange is liable, to be divided equitably among the organizations that are members.

If any member changes its station, it takes with it its part of any profits on hand, and if the entire post is discontinued, and the soldiers withdrawn, the property of the exchange is to be converted into cash, and it distributed equitably among the members.

In such event each person belonging to a member would sooner or later get the benefit of his particular portion.

The exchange is, therefore, an institution for private benefit, and the taxation of its property is no more likely to impede the efficient exercise of governmental powers than would the taxation of a railroad belonging to a private corporation, but engaged in the transportation of the United States mails.

No right to an injunction appears.

Wherefore it is ordered that the demurrer be sustained at the complainant's cost.